UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCA VITELA,<br><br>               Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Operations of Social Security,<br><br>               Defendant. | Case No. CV 16-09662-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.    **INTRODUCTION**

Plaintiff Francisca Vitela ("Plaintiff") challenges the Commissioner's denial of her application for a period of disability and disability insurance benefits ("DIB"). For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED.

## II.    **PROCEEDINGS BELOW**

On August 20, 2010, Plaintiff filed a Title II application for DIB alleging disability beginning November 8, 2008. (Administrative Record ("AR") 138.) Her application was denied initially on February 25, 2011, and upon reconsideration on June 2, 2011. (AR 81, 87.) On June 26, 2011, Plaintiff filed a written request for

hearing, and a hearing was held on January 19, 2012. (AR 18, 95.) Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert. (AR 20-57.) On March 28, 2012, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[1] from November 8, 2008 through June 30, 2011, the date last insured ("DLI"). (AR 75-76.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 7.)

Plaintiff filed an action in the District Court on May 13, 2013. (*See* AR 626-27.) On March 7, 2014, the Court reversed and remanded the matter for further administrative proceedings. (AR 639-46.)

Another hearing was held on July 28, 2015. (See AR 571.) The July 28 hearing was continued so that Plaintiff could undergo a consultative examination. A second supplemental hearing was held on February 9, 2016. (AR 613-25.) After the February 9 hearing, the ALJ propounded interrogatories on an impartial medical expert. (*See* AR 572, 1500-15, 1572-85.) A third hearing was held on June 9, 2016, after which the ALJ propounded interrogatories on another impartial medical expert. (*See* AR 572, 596-604, 902-09.)

A final hearing was held on September 20, 2016, where the ALJ offered a stipulation from the vocational expert. (AR 605-610.) On September 28, 2016, the ALJ again found that Plaintiff had not been under a disability, pursuant to the Social Security Act, from November 8, 2008 through the DLI. (AR 587-88.) Plaintiff filed this action on December 30, 2016. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

in substantial gainful activity since November 8, 2008, the alleged onset date ("AOD"), through June 30, 2011, her date last insured. (AR 576.) At **step two**, the ALJ found that through the DLI, Plaintiff has the following "conditions of ill-being" that, in combination, amounted to a severe impairment: cervical spine sprain or strain and disc protrusions with radiculopathy to the right upper extremity; thoracic spine sprain or strain; lumbar spine sprain or strain; mild right carpal tunnel syndrome; and depression. (*Id.*) At **step three**, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 577.)

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform light work . . . specifically as follows: the claimant can stand and walk up to six (6) hours, cumulatively, up to two hours at one time respectively, and sit up to six (6) hours, cumulatively, in an eight-hour work day. She can lift and carry up to 20 pounds occasionally, 10 pounds frequently. She can occasionally climb, balance, bend, stoop and crawl, but never climb ropes, scaffolds, or ladders. She may frequently handle, finger, and reach above shoulder level. She may have occasional exposure to excessive heat or cold, vibrating surfaces, moving mechanical parts or dangerous heights. She may frequently perform complex technical work and can perform a full range of simple, repetitive work capable to perform work at least at level 6 reasoning. She may have more than frequent but less than constant contact with co-workers and the general public. She may perform work at stress level 7 on a scale of (1) one to (10) ten, one, by example, the work of a night dishwasher and ten being the work of an air traffic controller, as the vocational expert may [be] familiar with these occupations as they are generally performed in the national economy.

(AR 579.)

///

///

3

At **step four**, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff was capable of performing past relevant work as an electrocardiograph technician, and therefore the ALJ did not proceed to **step five**. (AR 587.) Accordingly, the ALJ found that Plaintiff had not been under a disability from the AOD through the DLI. (AR 587.)

### III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins,* 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination

and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff raises the following issues for review: (1) whether the ALJ properly considered Plaintiff's mental RFC; and (2) whether the ALJ properly considered the opinion of Peter M. Schosheim, M.D. (Joint Stipulation ("JS") 6.) The Commissioner contends that the ALJ properly considered the evidence in assessing Plaintiff's mental RFC and properly considered Dr. Schosheim's opinion. (*See* JS 17-19, 24-25.) For the reasons below, the Court agrees with Plaintiff on the issue of her mental RFC and remands on that ground.

### A. The Mental RFC Assessment Is Not Supported By Substantial Evidence

Plaintiff contends that the ALJ did not properly assess the medical opinions, and thus the mental RFC is not supported by substantial evidence. (*See* JS 6-17.) The Commissioner contends that substantial evidence supports the ALJ's mental RFC finding. (JS 17.)

#### 1. Applicable Legal Standard

The ALJ is responsible for assessing a claimant's RFC "based on all of the relevant medical and other evidence." 20 CFR §§ 404.1545(a)(3), 404.1546(c); *see Robbin*s, 466 F.3d at 883 (citing Soc. Sec. Ruling 96-8p (July 2, 1996), 1996 WL 374184, at *5). In doing so, the ALJ may consider any statements provided by medical sources, including statements that are not based on formal medical examinations. *See* 20 CFR §§ 404.1513(a), 404.1545(a)(3). An ALJ's determination of a claimant's RFC must be affirmed "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *accord Morgan*, 169 F.3d at 599.

///

In the RFC assessment, medical opinions receive varying degrees of deference based on the provider: (1) treating physicians who examine and treat; (2) examining physicians who examine, but do not treat; and (3) non-examining physicians who do not examine or treat. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). Most often, the opinion of a treating physician is given greater weight than the opinion of a non-treating physician, and the opinion of an examining physician is given greater weight than the opinion of a non-examining physician. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The ALJ must provide "clear and convincing" reasons to reject the ultimate conclusions of a treating or examining physician. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Lester*, 81 F.3d at 830-31. When a treating or examining physician's opinion is contradicted by another opinion, the ALJ may reject it only by providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 633; *Lester*, 81 F.3d at 830; *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1164 (9th Cir. 2008). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (citation omitted).

Other non-medical sources may also provide opinions and testimony regarding a claimant's symptoms or the effects of a claimant's impairments on his or her ability to work. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). The ALJ must take this evidence into account, unless the ALJ "expressly determines to disregard such testimony, in which case 'he must give reasons that are germane to each witness.'" *Id.* (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)); *see Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

///

///

### 2. Discussion

#### a. Therapist Samira Vafadar, M.A.

Ms. Vafadar completed a medical opinion form on July 21, 2011. (AR 333-34.) The ALJ observed that Ms. Vafadar indicated that Plaintiff was mentally unable to work, has no useful ability to function in many areas, and is unable to work on a regular and continuing basis. (AR 585; *see* AR 333-34.) The ALJ assigned this opinion little weight. (AR 585.) A therapist is a nonmedical "other source," and therefore a therapist's opinion may be discounted if the ALJ provides germane reasons for doing so. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).

The ALJ found that Ms. Vafadar's opinion was contradicted by Plaintiff's conservative and mild treatment, her reported activities, and her demonstrated abilities. (AR 585.) The ALJ also noted that the treatment that Ms. Vafadar provided was "not commensurate with her rather extreme opinion," and Ms. Vafadar failed to mention any specific findings. (*Id.*) Plaintiff disputes the characterization of her treatment as conservative and mild, noting that her depression medication dosage was increased twice in 2011. (JS 11.) Plaintiff also contends that it is unclear what other treatment, besides medication and psychotherapy, is available for mental health. (*Id.*) Regarding Ms. Vafadar's lack of specific findings or treatment notes, Plaintiff notes that she testified about seeing her therapist for 45 minutes per session, once every three to four weeks. (JS 11-12.) Plaintiff faults both the ALJ who issued the original 2012 decision as well as the ALJ in the instant action for not asking Plaintiff about the lack of treatment notes from Ms. Vafadar. (JS 12.) However, Plaintiff does not contest the ALJ's assertion that Ms. Vafadar's opinion is contradicted by Plaintiff's activities and abilities, which is a valid reason for discounting the opinion. *See Carmickle*, 533 F.3d at 1164 (inconsistency with a claimant's activities is a germane reason to reject nonmedical testimony).

7

Accordingly, the Court finds that the ALJ provided a germane reason for discounting Ms. Vafadar's opinion.

### b. Psychologist Babak Govan, Ph.D.

In September 2010, Dr. Govan completed an initial psychological evaluation of Plaintiff. (AR 553-67.) The ALJ gave partial weight to the report with respect to Plaintiff's "relatively good performance during a mental status examination," but did not accept Dr. Govan's opinion that Plaintiff's alleged emotional symptoms may significantly impact her ability to work or function. (AR 585-86.) The ALJ rejected this portion of the opinion in light of the "longitudinal evidence," including Plaintiff's reported activities and demonstrated abilities. (AR 586.) The ALJ also noted that Plaintiff had not submitted a psychiatric or psychological Agreed Medical Examination report or any reports from psychiatric or psychological examiners on behalf of the insurance carrier. (*Id.*)

Plaintiff contends that these are not specific and legitimate reasons to reject Dr. Govan's opinion regarding Plaintiff's emotional symptoms. (*See* JS 14.) Plaintiff notes that the ALJ provided no explanation of the "longitudinal evidence," nor did the ALJ discuss Plaintiff's increased dosages of medication for depression. (JS 13.) Plaintiff also notes that the ALJ provided only a conclusory statement regarding Plaintiff's activities and abilities. (JS 14.)

The ALJ must provide more than mere "conclusions" or "broad and vague" reasons for rejecting an examining physician's opinion. *Embrey*, 849 F.2d at 421; *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). To satisfy the substantial evidence standard, he must also set forth his interpretation of the evidence and make findings. *See Reddick*, 157 F.3d at 725. Here, the Court finds that the ALJ's conclusory statements fall short of this standard. *See Akins v. Astrue*, No. EDCV08-01573-SS, 2009 WL 2949611, at *5 (C.D. Cal. Sept. 14, 2009) (stating that an ALJ erred by finding that an opinion from a psychiatric evaluation was "inconsistent with substantial evidence of record" without stating specific reasons

for rejecting the opinion because "more is necessary to satisfy the 'specific and legitimate reasons' standard").

Accordingly, the Court finds that the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, to reject a portion of Dr. Govan's opinion.

### c. Psychologist Steven Garman, Psy.D.

Dr. Garman conducted a complete psychological evaluation of Plaintiff in August 2015. (AR 1478-83.) Dr. Garman concluded his report with the following opinion:

> Ms. Vitela is suffering from chronic pain, which exacerbates her long-standing depression and anxiety. The likelihood that this condition would impair her capacity to maintain emotional regulation/stamina under stressful work conditions is significant. There is a strong likelihood that stress would result in episodes of crying or agitation or panic.

(AR 1483; *see* JS 16.) The ALJ noted that Dr. Garman's examination was conducted "well after" June 30, 2011, Plaintiff's DLI. (AR 586.) Therefore, according to the ALJ, Dr. Garman's opinion was of limited relevance and was deserving of little weight. (*Id.*)

"While the ALJ must consider only impairments (and limitations and restrictions therefrom) that [a claimant has] prior to the DLI, evidence post-dating the DLI is probative of [the claimant]'s pre-DLI disability." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1228-29 (9th Cir. 2010) (citing *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988)). Because Dr. Garman's probative opinion rested on his own independent examination of Plaintiff, the ALJ must provide clear and convincing reasons to reject his uncontradicted opinions. *See Embrey*, 849 F.2d at 422; *Lester*, 81 F.3d at 830-31. To the extent that any of Dr. Garman's opinions are contradicted by another opinion in the record, the ALJ must provide specific and legitimate reasons supported by substantial evidence in order to reject those

opinions. *Orn*, 495 F.3d at 633; *Lester*, 81 F.3d at 830; *Carmickle,* 533 F.3d at 1164. The ALJ failed to do so here.

An ALJ's errors are harmless if they are "inconsequential to the ultimate nondisability determination," and "a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). Here, Dr. Garman questions Plaintiff's "emotional regulation/stamina" and believes that stress could result in "episodes of crying or agitation or panic." (AR 1483.) However, the RFC assessment permits work "at stress level 7 on a scale of (1) one to (10) ten." (AR 579.) This stress-level limitation seemingly conflicts with Dr. Garman's opinion. The ALJ did not set forth any summary or interpretation of this evidence, nor did he make any findings regarding Dr. Garman's opinion, and so the Court is unable to determine if the ALJ's error in rejecting the opinion was harmless.

### d. Psychological Testing Results

Plaintiff notes that, in connection with her workers' compensation claim, evaluators reviewed the test results from two psychological examinations and considered the results to be valid. (JS 14.) Plaintiff seemingly disputes the ALJ's determination that, in light of other evidence—including evidence of malingering—"the test results should be viewed with caution." (*See* JS 14; AR 582.)

Plaintiff contends that her low Test of Memory Malingering ("TOMM") score in May 2011 did not result in a diagnosis of malingering "as generally it is diagnosed." (*Id.*) Plaintiff argues that examining psychologist TesiEllen Athans, Ph.D.'s statement that the TOMM score suggests that Plaintiff "may be malingering symptoms of a memory impairment"—rather than "is" malingering—is a "key difference." (*Id.*)

///

As Plaintiff highlights, Dr. Athans stated:

> The claimant endorsed significant memory problems. Her performance on a test of Memory Malingering suggests that she may be malingering symptoms of memory impairment. Test results underestimate her intellectual abilities which likely lie in the average range and this may be due to the fact that she was schooled in Mexico and stopped school after the sixth grade.

(AR 306.) Plaintiff contends that Dr. Athans's examination was similar to Dr. Garman's examination with respect to the Wechsler Adult Intelligence Scale, Wechsler Memory Scale, and Trail-Making Test results, "which further explains [that] 'maybe malingering' was in fact a culture/education issue as Dr. Athan['s] suggested." (JS 16.) Plaintiff asserts that the ALJ erred by failing to provide a similar explanation and instead "[taking] the 'may be malingering symptoms' for the concrete assertion that Vitela is malingering." (JS 14.)

After the ALJ discussed Plaintiff's mental test results, he determined that, "in the context of the longitudinal, objective evidence, evidence of malingering on the TOMM, unreasonably low I.Q. scores, etc., the test results should be viewed with caution due to their inconsistency with the other evidence." (AR 582.)

It is the job of the ALJ to assess and interpret the evidence. *See Reddick*, 157 F.3d at 725. Although Plaintiff disagrees with the ALJ's ultimate conclusion regarding Dr. Athans's "malingering" findings, the ALJ's interpretation of this statement is a rational one that must be upheld. *See Ryan,* 528 F.3d at 1198.

### 3. Conclusion

Although the ALJ permissibly discounted the opinion of Ms. Vafadar and properly considered Plaintiff's psychological testing results, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for discounting the opinions of Dr. Govan and Dr. Garman. Accordingly, remand is warranted on this issue.

///

11

## B. The ALJ Properly Considered Dr. Schosheim's Opinion

After the July 28, 2015 hearing, the ALJ propounded interrogatories upon Dr. Schosheim, a board certified orthopedic surgeon serving as an impartial medical expert. (*See* AR 572, 1500-15, 1572-85.) Dr. Schosheim reviewed Exhibits 1F to 22F of the record. (AR 1573.) Dr. Schosheim determined that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, bulging discs and degenerative disc disease of the cervical spine, and right carpal tunnel syndrome. (AR 1574-75; *see* AR 585.) He opined that the lumbar and cervical spine impairments became severe in 2008, and the right carpal tunnel syndrome became severe in 2011. (AR 1575; *see* AR 585.) Dr. Schosheim noted that physical therapy was appropriately and effectively prescribed for Plaintiff's impairments. (AR 1581; *see* AR 585.)

Dr. Schosheim was instructed to assess Plaintiff's functional limitations "during a twelve month period within each period in question, i.e. from November 8, 2012 to March 28, 2014, then from March 28, 2014 to the date of these interrogatories. (AR 1581.) Without distinguishing between time periods, Dr. Schosheim opined that Plaintiff could sit for 2 hours at a time, up to 4 hours in an 8-hour day; walk for 1 hour at a time, up to 4 hours in an 8-hour day; sit for 2 hours at a time, up to 6 hours in an 8-hour day; lift or carry 20 pounds occasionally and 10 pounds frequently' push or pull 20 pounds occasionally or 10 pounds frequently; occasionally climb, balance, stoop, kneel, crouch, and crawl; frequently reach, handle, and finger; and occasionally be exposed to heat and cold, vibrating surfaces, moving mechanical parts, high work places, and toxic and caustic chemicals. (AR 1581-82; *see* AR 585.)

The ALJ assigned partial weight to Dr. Schosheim's opinion, adopting the postural, environmental, and gross manipulation limitations because they were consistent with the objective and clinical findings. (AR 585.) The ALJ then adopted different standing, walking, and sitting limitations, finding that Dr.

Schosheim's imposed limitations were inconsistent with the evidence of relatively conservative treatment and no acute findings. (*Id.*) The ALJ also noted that Dr. Schosheim did not limit his evaluation to the date last insured. (*Id.*)

Plaintiff contends that the ALJ failed to specify any evidence of conservative treatment that is inconsistent with Dr. Schosheim's standing, walking, and sitting limitations. (JS 22.) Plaintiff notes that she received a cervical epidural injection requiring IV sedation in April 2011 and decided against spine surgery in June 2011. (*Id.*; *see* AR 350.) However, the ALJ thoroughly discussed his findings regarding conservative treatment earlier in his decision. *See Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (stating that an ALJ must "discuss and evaluate the evidence that supports his or her conclusion," but need not do so under a particular heading).

The ALJ noted that Plaintiff declined to undergo spine surgery in late June 2011, after an evaluation with an orthopedic spine surgeon (*see* AR 350), but the ALJ failed to develop the record for consideration of why Plaintiff declined surgery or if surgery would be successful at relieving Plaintiff's condition. *Cf. Carmickle*, 533 F.3d at 1162 ("[A]lthough a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." (citing *Orn*, 495 F.3d at 638)). The ALJ also noted that Plaintiff took Hydrocodone, which reduced her pain. (AR 581.) Impairments that can be effectively controlled with medication are not disabling for the purpose of determining eligibility for social security benefits. *See Warre v. Comm'r Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ incorrectly stated that there was "no evidence" of Plaintiff receiving injections for her back pain (AR 581), but courts in this district disagree as to whether epidural injections constitute conservative treatment. *Compare Ronquillo v. Colvin*, No. CV 14-6702 JC, 2015 WL 5768348, at *6 (C.D. Cal. Sept. 30, 2015) (upholding an ALJ's "reasonable interpretation" that medication, "some epidural injections," a lack of surgery, and a lack of

ambulatory devices constituted conservative treatment) *with Christie v. Astrue*, No. CV 10-3448-PJW, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (finding that narcotic pain medication, steroid injections, trigger point injections, epidural shots, and cervical traction were not conservative treatment). Finally, the ALJ observed that Plaintiff "was not aware of ever using a TENS unit" and did not use an assistive ambulatory device, nor was one medically necessary. (AR 581.) Despite conflicting or ambiguous evidence regarding whether Plaintiff's treatment was indeed conservative, it is the ALJ's duty to make findings and resolve conflicts in the evidence. *See Reddick*, 157 F.3d at 725. Because this evidence is "susceptible to more than one rational interpretation," the ALJ's decision must be upheld. *See Ryan,* 528 F.3d at 1198.

Regarding Dr. Schosheim's opinion not being constrained to the relevant time period, the ALJ must consider only impairments that existed prior to the DLI, but evidence that postdates the DLI can be probative of pre-DLI disability. *Turner*, 613 F.3d at 1228-29 (citing *Smith*, 849 F.2d at 1225). Dr. Schosheim found that Plaintiff suffered from severe impairments from 2008 and 2011 to the present (AR 1575), but he did not indicate whether the limitations he assessed were present limitations—as of the date of his responses in March 2016 (*see* AR 572)—or limitations that would be relevant before Plaintiff's DLI of June 30, 2011. Although Dr. Schosheim's conclusions about Plaintiff's impairments prior to her DLI may be probative of disability, the ALJ reasonably rejected some of the assessed limitations for not being limited to the time before Plaintiff's DLI. *See Ryan*, 528 F.3d at 1198 (an ALJ's decision should be upheld "[w]here evidence is susceptible to more than one rational interpretation").

Plaintiff also contends that, because Dr. Schosheim is a specialist and is board certified in orthopedics, his opinion is entitled to more weight. (JS 22 (citing 20 CFR § 404.1527(c)(5).) However, because Dr. Schosheim did not treat or examine Plaintiff, the weight of his opinions also depends on "the degree to which

[he] provide[s] supporting explanations for [his] medical opinions." 20 CFR § 404.1527(c)(3). Because it is not clear that Dr. Schosheim considered only the relevant time period before Plaintiff's DLI, the ALJ permissibly discounted parts of his opinion.

### C. Remand For Further Administrative Proceedings

Because further administrative review could remedy the ALJ's errors, remand for further administrative proceedings, rather than an award of benefits, is warranted here. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances). Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* (citations omitted). Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (citation omitted).

Here, remand for further administrative proceedings is appropriate. The Court finds that the ALJ failed to provide legally sufficient reasons for rejecting two medical opinions relevant to the issue of Plaintiff's mental RFC.

On remand, the ALJ shall reassess the opinions of Dr. Govan and Dr. Garman and provide legally adequate reasons for any portion of those opinions that the ALJ discounts or rejects. The ALJ shall then reassess Plaintiff's RFC and proceed through step four and step five, if necessary, to determine what work, if any, Plaintiff is capable of performing.

///

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: May 4, 2018

/s/
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**